

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

May 12, 1947

Hon. Charles D. Bates, Jr.,  Opinion No. V-195
County Attorney
LaSalle County                Re:  Whether or not a bonds-
Cotulla, Texas                     man on a Notary Public's
                                   official bond may obtain
                                   a summary release from
                                   liability thereon.

Dear Sir:

     Your request to this Department for an opinion
upon the above subject matter presents the following
questions:

     "1.  Is it possible for such bonds-
men to be relieved of further liability on
the bond?

     "2.  Is written notice to the County
Clerk asking that such names be removed
from the Notary Bond sufficient to relieve
such bondsmen of further liability?

     "3.  After such written notice has
been given to the County Clerk, is any fur-
ther act necessary on the part of such sure-
ties in order to relieve them of further lia-
bility on the bond?

     "4.  After such written notice has been
given to the County Clerk by such bondsmen,
is any further act necessary on the part of
such County Clerk to relieve such bondsmen
from further liability on such bond?

     "5.  If such bondsmen are released from
their bond, and until a new bond is executed,
would such Notary Public be duly qualified to
act as such?

     "6.  In the event the County Clerk
should determine that the bond of the Notary
Public is no longer a good bond, by reason

of the sureties having asked permission to withdraw their names from same, could a new bond be substituted by the Notary Public in lieu of the old bond, or would it be necessary to make a new application and qualify anew as a Notary Public?

"7. Does the County Clerk have any discretion in passing upon the qualifications of a Notary Public applicant, other than to determine (1), that the applicant is at least 21 years of age, and (2), that he is a resident of the County?

"8. In the event a person, who is drawing 100% disability pay from the Government as a mental case, applies for a Notary Public appointment, is it mandatory that the County Clerk accept such application and certify his eligibility to the Secretary of State? (Such person having never been declared insane by court action).

"9. Can the appointment of a Notary Public be protested to the Secretary of State, whereby that official may refuse to issue the Commission as a Notary Public?

"10. Under the present law, are there any limitations or restrictions against a person becoming a Notary Public other than the age and residence requirements? If so, with what officer does the authority rest to apply such limitations or restrictions, the County Clerk or the Secretary of State?"

Article 5949 of the Revised Civil Statutes of Texas as the same has been amended constitutes the whole of the statutory law governing Notaries Public in this State.

Since your questions are numerous and comprehensive in their scope, we quote the Article.

"1. The Secretary of State of the State of Texas shall appoint a convenient number of Notaries Public for each county of the State. Such appointments may be made at any time, and the terms of all appointments made shall end on

the first day of June of each odd numbered year.
As amended Acts 1945, 49th Leg., p. 393, ch.
254, § 1.

"2. To be eligible for appointment as No-
tary Public for any county, a person shall be a
citizen of this State and at least twenty-one(21)
years of age, and a resident of the county for
which he is appointed; provided, that where such
person resides within the limits of any incorpor-
ated city, town or village located in two counties,
said person may be appointed Notary Public for
either of such counties, but shall be authorized
to act only in the county for which such appoint-
ment is made; provided, further that nothing here-
in shall invalidate any commission as Notary Pub-
lic which has been issued and is outstanding at
the time this Act becomes effective.  As amended
Acts 1945, 49th Leg., p. 674, ch. 373, § 1.

"3. Any person desiring appointment as No-
tary Public shall furnish to the County Clerk of
the county of residence of the applicant his name
as it will be used in acting as such Notary Public,
his post office address, and shall satisfy the
Clerk that he is at least twenty-one (21) years of
age and a resident of the County for which such
appointment is sought.  The names of all such per-
sons shall be sent forthwith in duplicate by the
County Clerk to the Secretary of State with the
certificate of the County Clerk certifying that ac-
cording to the information furnished him such per-
son is eligible for appointment as Notary Public
for such county.  The Secretary of State shall act
upon all such names submitted at the earliest prac-
ticable time and notify the County Clerk whether
such appointment or appointments have been made.
Upon receiving notice from the Secretary of State
of any such appointment the County Clerk shall
forthwith notify all persons so appointed to
appear before him within ten (10) days from
the date of such notice (but not before the
first day of June of odd numbered years in the
case of appointments for the term beginning on
such date or re-appointments hereinafter pro-
vided for) and qualify as hereinafter provided.
The appointment of any person failing to qual-
ify within such ten (10) day period shall be
void, and if any such person desires thereafter
to qualify, his name shall be re-submitted in
the same manner as hereinabove provided.

"4. At the time of such qualification the County Clerk shall collect the fees allowed him by law for administering the oath and approving and filing the bond of such Notary Public, together with the fee allowed by law to the Secretary of State for issuing a commission to such Notary Public.

"5. Immediately after the qualification of any such Notary Public the County Clerk shall forthwith notify the Secretary of State that such person has qualified and the date of such qualification, and shall remit with such notice the fee due the Secretary of State, whereupon, the Secretary of State shall cause a commission to be issued to each such qualified Notary Public, which commission shall be effective as of the date of qualification. All such commissions shall be forwarded to the County Clerk for delivery to such persons entitled to receive them. Nothing herein shall prevent any qualified Notary Public from performing the duties of his office from and after his qualification and before the receipt of his commission.

"6. Any qualified Notary Public whose term is expiring may be re-appointed by the Secretary of State without the necessity of the County Clerk re-submitting his name to the Secretary of State, provided such appointment is made in sufficient time for such Notary Public to requalify on the expiration date of the term for which he is then serving; and provided further, that if any such Notary has removed his residence to a county other than the one for which he was appointed, his office shall be automatically vacated, and if he desires to act as Notary Public in such other county his commission shall be surrendered to the Secretary of State and his name shall be submitted by the Clerk of such other county as hereinabove provided.

"7. Any person appointed a Notary Public, before entering upon his official duties, shall execute a bond in the sum of One Thousand ($1,000.00) Dollars with two or more solvent individuals, or one solvent surety company authorized to do business in this state, as surety,

such bond to be approved by the County Clerk of his county, payable to the Governor, and conditioned for the faithful performance of the duties of his office; and shall also take and subscribe the official oath of office which shall be endorsed on said bond with the certificate of the official administering the same. Said bond shall be deposited in the office of the County Clerk and shall not be void on the first recovery, and may be sued on in the name of the party injured from time to time until the whole amount thereof has been recovered. Any such person shall be deemed to be qualified when he has taken the official oath of office, furnished the bond and paid the fees herein provided for, all within the ten (10) days allowed therefor.

"8. If any County Clerk fails or refuses to forward the names of persons requesting appointments, notices of qualification, or to remit any fees due to the Secretary of State, or to notify any applicant of his appointment within sixty (60) days after receipt of same by the County Clerk, the Secretary of State shall certify such failure or refusal to the State Comptroller, the County Auditor and Commissioners Court of such county, after which no claim or account in favor of such Clerk shall be approved or paid until the Secretary of State shall certify to such officials that all requirements hereunder have been complied with.

"9. All matters pertaining to the appointment and qualification of Notaries Public shall be public records in the offices of the County Clerks and in the office of the Secretary of State after any such Notary Public has qualified, and shall be open to inspection of any interested person at such reasonable times and in such manner as will not interfere with the affairs of office of the custodian of such records; but neither a County Clerk nor the Secretary of State shall be required to furnish lists of the names of persons appointed before their qualification nor lists of unreasonable numbers of qualified Notaries Public. As amended Acts 1939,

46th Leg. p. 406, § 1; Acts 1941, 47th Leg.,
p. 853, ch. 528, § 1; Acts 1943, 48th Leg.,
p. 459, ch. 509, § 1."

We shall answer your questions in the order in
which you have presented them.

1.    The statute nowhere prescribes any method
by which a surety executing a Notary Public's bond may be
summarily relieved of further liability. If the bond were
a common law obligation of suretyship affecting only in-
dividuals, the matter of such a release could no doubt
be effected through the mutual agreement of all parties
concerned therein.  But such is not the case here, seeing
that the bond is a statutory bond payable to the Gover-
nor, conditioned for the faithful performance of the du-
ties of the Notary's office.  The Governor, in his capac-
ity of payee, is of course the fiduciary of the State,
and there is no provision of law authorizing him in such
capacity to release such surety.  Moreover, since the ob-
ligation of the surety is in essence one to the State,
the Legislature itself would appear to have no authority
to release or to provide a method of releasing such obli-
gation.  (Const. Art. III Sec. 55).  Be this as it may,
no method is prescribed by law for such a release.

While the County Clerk is made the intermedia-
ry, and therefore the agent under the statutes for the
purpose of expediting appointments of Notaries Public by
the Secretary of State, nevertheless he is given no au-
thority whatever in respect to the matter of releasing
a bondsman whose suretyship has been duly consummated in
accordance with the law.  It is a familiar principle of
law beyond the need of citation of authorities, that pub-
lic officers have only those powers conferred upon them
by law.

In Murfree on Official Bonds (an older text,
1885) p. 525, sec. 776, it is said:

"In the absence of a statutory pro-
vision to that effect, a surety cannot pro-
cure his release by giving notice to the
obligee of the bond, of his desire and in-
tention to terminate his liability."

In that modern compendium American Jurisprud-
ence, Vol. 50, p. 926, Sec. 37, it is said:

"But in the absence of contract or statutory authorization a surety who is obligated for a definite time, or for the performance of a definite contract, cannot before default and without the consent of the principal parties terminate his undertaking by a mere notice to that effect -- a rule which is applicable to sureties on bonds of building contractors and bonds of fiduciaries, such as executors and administrators and guardians."

Your first question is answered in the negative.

In view of our answer to Question No. 1, it becomes unnecessary to answer your further Questions 2, 3, 4, 5, and 6.

7. The County Clerk has no discretion in the matter of performing the duties required of him by the statute concerning Notaries Public. It is his duty to obey the law. Concretely, this means that the County Clerk, upon being satisfied that an applicant for appointment is a citizen of this State is at least 21 years of age, and resident of the county for which such appointment is sought, shall proceed forthwith to do those things specifically required of him by the statute. The County Clerk is liable for any violation of the statute in the respects above mentioned, as provided in subdivision 8 thereof. Under the succeeding section 9 such matters of appointment and qualification constitute public records open to the inspection of any interested person.

8. Where any applicant for appointment as Notary Public who possesses the essential requisites of eligibility laid down in the statute, it is the mandatory duty of the County Clerk to accept his application and to certify to the applicant's eligibility in these respects and transmit the same to the Secretary of State. It does not follow from this, however, that the County Clerk may not, in the process of certifying, make known to the Secretary of State, any additional fact or information in his possession affecting such person's fitness or unfitness for appointment. It is not only the privilege of the County Clerk, but the moral duty as well, to make known to the Secretary of State any such probable disqualifications of the applicant.

9. Notaries Public are public officers of the State, and as such, the matter of fitness for such office is one of public concern from which it follows that any person interested may make protest to the Secretary of State against the appointment.

10. Your question is very broad indeed, and our answer is necessarily general. There is an implied limitation embodied in the first sentence of Article 5949 which authorizes the Secretary of State to appoint "a convenient number" of Notaries Public for each county in the State. Necessarily, it is implicit in this language that the Secretary of State may determine what is a "convenient number" of Notaries Public for any particular county. It would not be his duty to appoint more than such determined convenient number. In the next place, if the applicant should be known to the Secretary of State to be mentally incapable of performing the duties of the office, or if he should be known to the Secretary of State as one having been convicted of a crime which under the law would have made it the duty of the trial court to remove him from any public office held by him at the time, we think it certainly would be the moral, if not the legal duty of the Secretary of State to refuse to make the appointment. We think it is a wholesome implication of law that the power in one to appoint a person to public office implies that he should not appoint any person who is legally ineligible or, what is perhaps the same thing, factually incapable or incompetent to discharge the duties of the office.

### SUMMARY

There is no authority for a bondsman of a Notary Public to obtain a summary release from further liability on such bond. A county clerk has no discretion in receiving and forwarding application for notary appointment to the Secretary of State, but he may and should advise the Secretary of any disqualifications of the applicant which would render service as a public officer unlawful or impossible. The Secretary of State could refuse appointment under certain conditions. Art. 5949, as amended, V.C.S.

Yours very truly,

APPROVED MAY 13, 1947

Price Daniel
ATTORNEY GENERAL OF TEXAS

OS:WB:jrb

ATTORNEY GENERAL OF TEXAS

By Ocie Speer
Ocie Speer
Assistant